Commissioners of Sinking Fund v. Woodward.

---

COMMISSIONERS OF THE SINKING FUND OF NEW JERSEY

*v.*

ROBERT WOODWARD et al.

By a will proved in 1861, a testator owning three farms devised one of them to his son Robert, another to his son Edward, and the third to Robert and Edward. He also gave the income of $4,000 to his granddaughter for life, and the principal to her issue, if any, and charged all his lands with its payment. The granddaughter was married in 1880, and has issue now living. In 1869, Edward became the sole owner of the farm devised to him and Robert, and under the foreclosure of a mortgage thereon given by him to complainants in 1872, they became its owners in 1882. In 1877, Robert conveyed the farm devised to him, to E. W., who still owns it. In 1879, Edward conveyed to his wife the farm devised to him, and she still owns it. On a bill by complainants for an apportionment of the charge of the legacy on the three farms—*Held,* that the rule fixing the order of liability where several tracts of land have been encumbered by one charge, and they are afterwards aliened, does not apply to this case, but that complainants are entitled to a decree establishing among the present owners of the three farms the ratable proportion of the legacy which each farm ought to pay, including an equitable adjustment of the excess, if any, heretofore paid by the owner of any of the farms, on account of the annual interest on the legacy.

---

Bill for relief. On final hearing on bill and answers.

*Mr. J. H. Stewart,* for complainants.

*Mr. W. D. Mills,* for Emily Woodward.

THE CHANCELLOR.

The object of this suit is, according to the bill, to obtain an equitable apportionment of a legacy of $4,000 and interest, upon the property charged therewith. The charge is under the will of Robert Woodward, deceased, late of the county of Monmouth, who died March 7th, 1861. The will is dated June 18th, 1857, and was proved March 26th, 1861. By it the testator gave to his wife, in lieu of her right of dower, the interest of $5,000, payable yearly, for life. He then gave to his daughter Emily the interest of the like sum, payable in like manner, during the life of the widow, her mother, with provision that in case of Emily's marriage in the lifetime of her mother, $1,000 were to be paid to her, and in that case she was to have the interest of only $4,000 during her mother's life. From the death of her mother she was, if she had not then married, to have the interest of $5,000 more, $10,000 altogether, for life. In case she had married and the $1,000 had been paid to her, she was to have the interest of only $9,000 for life. At her death, the principal, in case she should leave lawful issue, was to go to such issue; but in case she should leave no lawful issue, it was to revert to the testator's estate, and the residuary legatees were to be forever exempt from paying it. He then gave to his granddaughter, Mary B. Woodward (now wife of Matthew S. Williamson), the annual interest of $4,000, for life, from the age of eighteen years, and directed that in case of her death, leaving lawful issue, the principal be paid to such issue; but if she should die without lawful issue, then it was to revert to his estate, and his residuary legatees were to be forever exempt from paying it. He then gave to his wife and his daughter Emily, and his daughter-in-law Edith, widow of his deceased son Joseph, a home in his mansion-house so long as they should remain unmarried. He then gave to his son Edward a farm of about two hundred and ten acres; to his son Robert a farm of about one hundred and sixty acres, and the residue of his property, in which are included his homestead farm of about one hundred and fifty acres

and some outlands and cedar swamps, to Edward and Robert, in equal shares, directing them to pay all of the legacies, and charging and binding all his real estate with the payment thereof; and he appointed them executors. They proved the will. The widow died August 11th, 1873, and Edith, Joseph's widow, in January, 1881. Mary B. Woodward (now Williamson) attained the age of eighteen years September 20th, 1874. She was married February 5th, 1880, to Matthew S. Williamson, by whom she has three children. On April 5th, 1869, the testator's widow, and Emily, gave to Edward and Robert a release (recorded the next day) of their claims, under the will, upon the homestead farm. On the same day on which the release was given, Robert and his wife conveyed his undivided half of that property to Edward, by deed of that date, recorded the next day. On March 23d, 1872, Edward and his wife gave a mortgage for $8,000 and interest, upon that farm, to the complainants, who subsequently foreclosed it, and bought the property at the foreclosure sale, and it was conveyed to them by the sheriff by deed dated October 20th, 1882. On April 19th, 1877, Emily bought the farm of one hundred and sixty acres, and still owns it. On May 22d, 1879, Mary H. Woodward, wife of Edward, became the owner of the other farm of two hundred and ten acres, and still owns it. The outlands and cedar swamp have been sold. The three farms are of about the same value (about $80) per acre. The outlands and swamp appear to be of but small value. Robert and Edward are both insolvent. The bill prays an apportionment of the Williamson legacy upon the testator's lands, in proportion to the value of the respective parcels. On the hearing, the complainants claimed that, under the circumstances, instead of an apportionment, as prayed by the bill, there should be a declaration, establishing the liability of the properties, respectively, for the payment of the legacy, in inverse order of the alienations made since the death of the testator. There is no ground for this latter claim. The rule applicable to cases where the owner of several parcels of land, subject to the charge of a legacy, sells them at different times to persons without notice of the encumbrance of the legacy, does not apply to the case in hand. Here the several

parcels came to the owners by different titles—different devises under the same will. In such a case the rule of ratable contribution is applicable. The outlands and cedar swamp must be left out of view, for no decree can be made in reference to them, because the owner or owners thereof are not parties to the suit. The farms of one hundred and sixty and two hundred and ten acres, respectively, were specifically devised, the one to Edward and the other to Robert, and the farm of one hundred and fifty acres (the homestead) was given to Edward and Robert by the residuary clause of the will. All of these properties were devised subject to a common charge of the legacies. In the hands of the devisees, and as between them, each was in equity bound for its proportionate share, and no more. As between the legatees and devisees, the legacies were a charge to their full amount on each property and on all of them. When one of the properties was sold and conveyed, it was conveyed subject to the existing lien of the legacies. Had Edward sold and conveyed the homestead farm by deed, with warranty, equity would have protected his grantee, as between them, against the existing lien of the legacies, by throwing the burden, which otherwise that property would have borne, upon the farm of two hundred and ten acres, still in Edward's hands, or those of his subsequent grantee. But he did not so sell it. He mortgaged it subject to the Williamson legacy, and the complainants, though purchasers at the sheriff's sale under the foreclosure, acquired, as such purchasers, Edward's title and no more; that is, they took the property subject to the legacy. The complainants are entitled to a decree establishing, as between the respective owners of the three properties, the ratable proportions which each ought, in equity, to pay of the Williamson legacy. It will be proper also to establish in this suit the amount which the owner of any of the properties should pay to the owner or owners of the others, or of either of them, for money heretofore paid by the latter in excess of the amount which he or she ought, in equity, as between the owners of the respective properties, to have been required to pay. No costs will be awarded to either party in this suit.